Dar gan, Ch.
delivered the opinion of the Court.
James Pulliam died in the year A. D. 1832, leaving some real and personal estate, which he disposed of by his will, which was duly executed. The will is remarkable for its brevity, and is couched in language which shews that the testator was a very illiterate person. The disposing part of the will is in one sentence, and is as follows: “ My will and desire is that after all my jest, debts is paid that all my probity Rale and personal shall remain in the hands of my beloved wife during her natural life and that she shall have the disposal of one half of it at her death.” The will concludes by appointing testator’s wife, Rhody Pulliam, executrix, and his friend Zachary Pulliam, executor. The executor and executrix named in the will having declined the appointment, administration with the will annexed was granted to Thomas B. Byrd, who, having qualified, assumed the duties of his trust. At his death, the testator left the children of a brother and a sister, and his wife, Rhody Pulliam, surviving him. He also left a tract of land and several slaves, mentioned in the pleadings, and some other personal property and assets. Rhody Pulliam died in June, 1846, intestate, and Thomas B. Byrd administered upon her estate. She also left several next of kin, who, with Byrd the administrator, are the defendants in the bill, which is filed by the heirs at law and distributees of Jam&s Pulliam, for a partition of the land and negroes devised and bequeathed to his wife Rhody Pulliam in the clause of the will already recited.
For the next of kin of the widow it is contended, that the will gives her an absolute estate in one moiety, and a life estate in the other, and that the whole of the former is distributable among her relations as her own estate, while the moiety in which she took a life estate, after the termination of the life estate is intestate property of James Pulliam, of which she, as widow, is entitled to half, which on her death must go to her next of kin; thus constituting in them a valid claim to three-fourths of the lands and negroes which were of the estate of James Pulliam. On the part of the heirs and distri-butees of the husband it is urged, that the will gave to the widow a life estate in the whole of the testator’s property, with a power of appointment as to half, and that the widow having failed to execute the power of appointment, the whole property that passed under the will, on her death becomes the intestate estate of James Pulliam, of which they are enti- *142 tied to one moiety, and the defendants, as the representatives of the widow, are entitled to the other moiety.
Barford v. Street, Irwm’v. Par-rer, 19 Vesey. 86-Vesey, 451.
The Chancellor who heard the case adopted that construe-t¿on was presented in behalf of the next of kin of the wife, and by his decree gave them three-fourths of the estate, and the next of kin of the husband one fourth thereof. And this is an appeal from that decree on the part of the complainants, who are the heirs at law and distributees of the husband.
The only question which this Court deems it necessary to consider, will be presented and discussed in the remarks which I am now about to submit. The decision must turn upon some nice and rather artificial distinctions, and an appeal be made to the authorities for the purpose of ascertaining the principle which has governed the Court of Equity in the determination of questions of this character.
Upon what appears to this Court to be a correct construction of this will, the wife took an estate in the whole property, which by the terms of the will is limited to her life, with a general power of appointment, as to the other moiety, without restriction as to time or mode for the exercise or execution of that power. And if the estate had not been limited to her life, there is no doubt that she would have taken an absolute interest in one moiety. For the proposition is undeniable, that a devise or bequest to one generally and indefinitely, with an unlimited power of appointment, gives an absolute estate. But though the view taken by the Chancellor his decree is not unsupported by authority, it appears from t'le general current of decisions and the opinion of eminent jurists, that where there is a gift to one for life, Avith a general power of appointment, the power of appointment, though genera^ does not enlarge the life estate into an absolute interest, and nothing passes under the clause conferring the power, unless it be executed. As was said by Sir William Grant in the case of Bradley v. Wescott, “ the distinction is perhaps slight, Avhich exists betAveen a gift for life, with a power of disposition superadded, and a gift to a person indefinitely, with a superadded power to dispose by deed or will. But the distinction is perfectly established, that in the latter case, the property vests. A gift to A, and to such persons as he shall appoint, is absolutely property in A, without any appointment. But if it is to him for life, and after his death to such person as he shall appoint by will, he must make an appointment to entitle that person to any thing.” This manner of stating the proposition is in conformity with the opinion of this Court, and the distinction drawn, though narrow and refined, is fully sustained by the decided cases. It is unnecessary to enlarge upon a question, the decision of which rests so entirelyupon authority. Nor is it necessary to encumber this opinion by a *143 reference to the numerous authorities which might be cited in support of it. It will be sufficient to say, that the distinction here recognised is sustained by the most eminent authors on Powers, and by a very uniform current of decisions.
In reference to the complainants’ last ground of appeal, this Court concurs with the Chancellor in the views which he has taken, and for the reasons stated in the decree.
It is ordered and decreed, that the decree of the Chancellor be modified, and that the complainants, as heirs at law and distributees of James Pulliam, are entitled to one-half of the real and personal estate described in the bill, and which was given by his will to Rhody Pulliam for her life. In all other respects the decree of the Chancellor is affirmed and the appealed dismissed.
Johnston, Ch. Dunkin, Ch. and Caldwell. Ch. concurred.

Decree modified.